LAKE v. MUDGETT et al.

(Circuit Court of Appeals, Sixth Circuit. August 3, 1918.)

No. 3132.

1. RECEIVERS ⬤⟹128—PRIORITY—RECEIVERS' CERTIFICATES—ESTOPPEL.

A purchaser of corporate bonds secured by mortgage, who failed to make known his ownership of the bonds until after receivers' certificates were issued on the consent of the other bondholders, and made prior to the lien of the mortgage, could not, after the enterprise as conducted by the receivers had proven a failure, assert that he had not consented to the issuance of certificates, and that his original lien under the mortgage was entitled to priority.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. RECEIVERS ⬤128—APPLICATION OF INSURANCE PROCEEDS—TITLE TO PROP-
   ERTY.

       A bondholder of a corporation, who failed to object to a sale of the
   property and assets of the corporation, could not object that proceeds of
   fire insurance policies were applied under orders of court to the obliga-
   tions of the receivers, instead of towards the payment of the bonds;
   the loss having occurred after the sale, so that it fell upon the pur-
   chaser, and not the seller.

Appeal from the District Court of the United States for the South-
ern Division of the Western District of Michigan; Clarence W. Ses-
sions, Judge.

Suit by Arthur C. Lake against Alfred B. Mudgett and another, re-
ceivers of the Bear River Paper & Bag Company. From an order
denying full payment of certain mortgage bonds, and directing pay-
ment of certain expenses incurred by the receivers, complainant ap-
peals. Affirmed.

Appeal from an order denying to appellant, Arthur C. Lake, full payment of
certain mortgage bonds issued by the Bear River Paper & Bag Company in
1910, and directing that the expenses and liabilities subsequently incurred
by receivers of the company (through sanction of the court) be first satisfied,
and that the remaining assets be distributed pro rata among all the bond-
holders; and the question is whether appellant is estopped to claim priority
in respect of the lien of such mortgage as against the expenses and liabilities
so incurred by the receivers.

The facts disclose remarkable instances of effort and failure to establish a
successful manufacturing business. During the course of the business it
seems to have comprised the manufacture of sulphite pulp, wrapping paper
and other papers, and paper bags. The plant was located and the business
carried on at Petoskey, Mich., and according to the record the business was
begun by the Petoskey Fiber Paper Company. That company failing, its
property was sold under proceedings to foreclose a mortgage, and the plant
lay idle for some years prior to 1910, when it was taken over by the Bear
River Paper & Bag Company. On July 1st of that year the Bear River Paper
& Bag Company issued coupon bonds in the sum of $200,000, securing their
payment through mortgage of its property in trust to the International Trust
Company of Boston, Mass., the mortgage being duly recorded in Emmet county,
Mich. The company commenced operations in January, 1911, and continued
only until June of that year. On the 22d of that month, Frederick L. Rey-
nolds, as a stockholder and creditor of the mortgagor company, commenced
suit against the company in the court below "on his behalf and on behalf
of such other stockholders and creditors of the defendant corporation as shall
elect to join in the prosecution of this suit," setting out specifically his interest
as stockholder and creditor, describing the business and financial conditions
of the company, and praying the appointment of receivers. The company filed
answer, admitting the allegations of the petition and joining in its prayer. An
order was entered finding the existence of the mortgage indebtedness before
mentioned, with accrued interest, and of outstanding open accounts and bills
payable to the amount of $60,000; that the company was unable to pay its
debts as they matured; and appointing Leon W. Chichester and Alfred B.
Mudgett as receivers, vesting in them the property and assets of the com-
pany, with power to conduct its business, subject to the supervision of the
court. Later, upon petition of the receivers and upon notice given "to all
known creditors, and no one appearing to oppose it," an order was made,
August 28, 1911, empowering the receivers to borrow money and to issue
interest-bearing certificates in the sum of $50,000, which were to be a first
lien on all property subject to the bonds mentioned, and moreover "a first lien
prior and superior to the lien of said mortgage securing said bonds upon
the consent and approval in writing of this order by the said International

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Trust Company." September 27, 1911, the Trust Company filed an instrument consenting that "any and all certificates that may be issued by the receivers under said order shall be a first lien prior and superior to the lien of said mortgage."

Subsequently the receivers met with serious difficulties in the prosecution of the business, and endeavored to overcome them by leasing the property to another company. This plan was followed for several years, but failed for reasons that need not be set out. It is enough to say that the receivers secured an offer of $150,000 from George A. Fernald & Co. of Boston, Mass., for the entire property and assets of the company, and that they filed a petition, August 29, 1916, alleging that upon investigation they were satisfied the property ought to be sold, that in their opinion the offer should be accepted, and praying for an order accordingly. An order was made requiring the creditors and stockholders of the company to show cause on September 25, 1916, why the offer should not be accepted, and directing a copy of the order meanwhile to be served personally upon the creditors and stockholders, and also to be published in a named newspaper of Petoskey.

At the time appointed to show cause the appellant, Arthur C. Lake, filed a petition alleging that on September 20, 1910, he purchased $5,000 par value of the company's bonds, and praying for an order "that notice be given to him of any future proceedings or orders." So far as the record shows, this was his first appearance in the cause. It is stated in a petition filed by the receivers January 30, 1917, and it is not denied, that on the date fixed to show cause, September 25, 1916, an order was made authorizing and directing the receivers to accept the offer of Fernald & Co. It further appears, without denial: (a) By that petition, and also by another petition, filed on June 21st following, that the offer of Fernald & Co. was accepted September 30, 1916; and (b) by the petition of January 30, 1917, that after such acceptance, and while the receivers were in possession of the property and assets, for the purpose of carrying out the order directing acceptance of the offer, a portion of the property was destroyed by fire. Prior to the dates of these petitions, on December 22, 1916, the court in effect found upon petition of the receivers that the policies of insurance covering the property so destroyed by fire contained clauses which inadvertently made losses arising under the policies payable to the trustee under the mortgage, while it was the intention that such losses should be payable to the receivers for the protection of their obligations in preference to the interest of the trustee; and an order was made directing that the money received under the policies be paid to the receivers for use and distribution under further orders of the court, and that a copy of the order be mailed to the trustee.

June 21, 1917, the receivers presented a petition, setting forth their sale and conveyance of the property and assets free and clear of all prior liens and incumbrances, their payment of various obligations created under previous orders of the court, and stating a balance of $14,116.68, which would be reduced by some minor expenses of administration, and praying an order to approve and confirm such sale and conveyance, and the other acts and doings of the receivers, and to direct distribution of the remainder pro rata among the holders of the outstanding mortgage bonds, upon which the court directed that the creditors and stockholders, the mortgage trustee, and Albert E. Lake, attorney for certain creditors, be notified to show cause, on July 6, 1917, why an order should not be entered as prayed in the petition. According to the record, Arthur C. Lake was the only creditor who presented objections. He filed an answer, in effect admitting that the trustee under the mortgage gave its consent to the issue of receivers' certificates in the sum of $50,000, and alleging that before doing so it obtained the consent of all holders of the bonds except himself, but that "it does not appear of record" that the trustee "consented to the issuance of any notes or the incurring of any obligations by the receivers in addition" to the $50,000 in certificates of indebtedness, and further that he did not consent to the issuance of any certificates. The remaining objections are so far as deemed necessary considered in the opinion. The matters set out in the petition of the receivers and objected to by Arthur

C. Lake were heard upon evidence, and the prayer of the petition was granted. The appeal is based on this order.

A. E. Lake, of Chicago, Ill., and Earl W. Munshaw, of Grand Rapids, Mich., for appellant.

Clapperton & Owen, of Grand Rapids, Mich., for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] 1. Appellant stands strictly upon the lien created by the mortgage. He admits that holders of bonds so secured may waive the lien, and indeed claims that all the holders of bonds under the mortgage, except himself, have in fact waived the lien; but he insists that neither the acts of the other bondholders nor those of the trustee under the mortgage operated as a waiver of his lien. Appellant's theory is that, having once obtained the benefit of the lien, he should not be deprived of it without his explicit consent. The basis of his position, as we understand the contention, finds expression in the rule concerning mortgages of private enterprises, as distinguished from decisions relating to mortgages of corporations of quasi public character, like railroads; stated otherwise, there is no necessity, for example, as respects the issuance of receivers' certificates with priority of lien in working out financial embarrassments of purely industrial enterprises, similar to the public necessity existing under kindred embarrassments of common carriers of passengers and freight. It is to be observed, however, that this distinction concerns the power of a court to provide for supplanting a mortgage lien by an order authorizing the issue of receivers' certificates, and not the right of the bondholder to surrender the benefit of the lien. Among the cases cited respecting the distinction mentioned are Doe v. Northwestern Coal & Transportation Co., 78 Fed. 62, 73 (C. C.); International Trust Co. v. Decker Bros., 152 Fed. 78, 83, 81 C. C. A. 302, 11 L. R. A. (N. S.) 152 (C. C. A. 9); In re J. R. & J. M. Cornell Co., 201 Fed. 381, 387 (D. C.); Hanna v. State Trust Co., 70 Fed. 2, 7, 16 C. C. A. 586, 30 L. R. A. 201 (C. C. A. 8). Decisions of this class, although dealing with mortgages of private corporations, usually recognize the right of the bondholder to give up or otherwise to waive the benefit of his lien; indeed, such decisions are in no wise opposed to the equitable principle that a bondholder may so conduct himself with respect to receivership proceedings as to preclude him from insisting that an order of the court is invalid for want of his affirmative consent. Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 463, 464, 6 Sup. Ct. 809, 29 L. Ed. 963. True, that case concerned railroad interests; and yet the contention there made touching lack of affirmative consent on the part of certain bondholders is in principle analogous to the contention here urged; emphasis is given to the analogy by reason of the affirmative consent and sanction given by the present trustee to all the orders entered below in the belief, as we shall see, that it was acting with the approval of all the bondholders.

The truth is that appellant was put to an election whether he would seasonably oppose or would abide by the orders entered from time to time in the receivership proceeding. He purchased the bonds from the plaintiff, Reynolds, in the very case from an order in which he appeals. Reynolds sold only part of his bonds to appellant, and was a bondholder as well as a stockholder during the entire period of the receivership. Fernald & Co. owned the rest of the bonds. It was believed throughout by that company, by the trustee under the mortgage, by the receivers, as also by the court itself, that the Fernald Company and Reynolds owned the entire issue of the bonds. Appellant gave no intimation that he held the bonds in suit until the date fixed, September 25, 1916, to show cause why the property and assets of the mortgagor company should not be sold for $150,000. On that date, as we have seen, appellant caused a petition to be filed in the cause disclosing his ownership of $5,000 par value of the bonds; even then he did not object to the sale, although the consideration to be paid was $50,000 less than the total issue of the outstanding bonds. Besides, the receivership proceeding had been commenced as a representative suit more than five years before, June 22, 1911; and no reason is perceived, none is even suggested, why appellant should not seasonably have appeared in the suit and interposed objections if he had any to the issue of the receivers' certificates and the incurring of the other obligations before they were sanctioned by the court. When speaking of appellant's long concealment of his purchase of bonds and contrasting his conduct with that of the other bondholders, the learned trial judge said:

"* * * Having kept silent and permitted the expenditure of these moneys, the issuance of the receivers' certificates, with the priority which was attempted to be given (appellant) cannot now be heard to complain. He knew that the other bondholders were putting up the money and were financing this enterprise; that they were attempting to preserve the plant and make it worth something, and to put it in a condition where it might be sold. He kept silent, not only as to his ownership of this portion of the bonds, but also as to any objection that he had to that proceeding, and, in equity, I do not think that he can claim at this time the benefits of what he permitted others to do. * * * He had notice of all the orders for the issuance, and of the issuance, of the receivers' obligations, and still he kept silent until the money had been expended and until the enterprise proved to be a failure, and then he seeks to have himself preferred to those who have borne the burdens. I do not think that a court of equity can lend its aid to such a contention." *

We approve these findings and the conclusion of the court. The appellant's silence explains the fact that he did not consent to the issuance of the receivers' certificates; that is, as we interpret the course he pursued, he did not affirmatively consent; but, unless form is to usurp substance, his conduct is none the less binding upon him. True, it is urged that the evidence fails to show that appellant was aware of the facts ascribed to him in the opinion of Judge Sessions.* Presumably the appellant would have kept in touch with the acts of the receivers, since he admits that the interest accruing on his bonds was in default throughout the entire litigation. Testimony was introduced at the hearing of July 6, 1917, which tends to show that appellant was conversant with the various proceedings taken and orders made during

the receivership. The testimony was calculated to elicit denials from both appellant and his brother (his attorney), yet neither offered himself as a witness. It is a significant fact that appellant nowhere denies that he knew of the receivers' applications for the orders, or of the orders themselves, as they were severally entered. The acts of the receivers, as we have already said, extended over a period of more than five years, and it was not until the other bondholders had supplied the money necessary to meet the expenditures incurred in building up the plant and developing the business that appellant objected. The trial judge heard the testimony and was familiar with the situation from beginning to end, and in the circumstances pointed out we are not disposed to disturb his findings.

2. Among appellant's objections to the reports of the receivers it is stated, and made the subject of an assignment of error, that they made improvements and betterments of the property and incurred indebtedness without the approval of the court. These assertions are in effect refuted by what is shown in the statement of facts, and particularly by the findings of the court.

[2] 3. The assignment relating to appellant's objection that the fire insurance proceeds should have been applied toward payment of the bonds and not obligations of the receivers is met: (a) By the proceedings and order in which the policies of insurance were reformed, so as to require the moneys derived under them to be paid to the receivers, instead of the mortgage trustee, and applied according to the orders of the court, as pointed out in the statement of facts; and (b) by the fact that the fire occurred after the offer of Fernald & Co. to purchase the property and assets of the company had been accepted under the court's authority and direction—in other words, the loss occasioned by the fire was the loss of the purchaser, not the seller, and appellant has at no time objected to the sale.

4. Several contentions are made, whish have neither fact nor assignment to justify them. One is, for instance, that there was "collusion between the trustee, Fernald & Co., and the receivers." There was no issue tendered, and no testimony offered below, in relation to such a charge. It is not suggested that Reynolds' course was actuated by any improper motive, and yet appellant's bonds are but part of the Reynolds bonds. Appellant does not seem to appreciate the evidential effect of the concurrence of all the other interested parties in the very proceedings and orders which he alone challenges. Whatever rights he may have originally possessed, his long neglect to assert them, and the inevitable misleading effect of this upon the court and parties alike, must be held to estop him from claiming priority in virtue of the mortgage lien.

The order appealed from will be affirmed, with costs.